**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF KENTUCKY**
**LOUISVILLE DIVISION**

**CIVIL ACTION NO. 3:13CV-01241-JHM**

**ROGER D. CARTER, EDDIE DEAN HEWITT,**
**DAVID WAYNE WARREN, RICKY LYNN WOODS**
and a class of others similarly situated                                           **PLAINTIFFS**

**V.**

**ARKEMA, INC. and**
**ARKEMA INC. RETIRMENT BENEFITS PLAN**                              **DEFENDANTS**

**MEMORANDUM OPINION AND ORDER**

This matter is before the Court on cross motions by the parties for partial summary judgment [DN 35, DN 36]. Fully briefed, this matter is ripe for decision.

**I. STANDARD OF REVIEW**

Before the Court may grant a motion for summary judgment, it must find that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The moving party bears the initial burden of specifying the basis for its motion and identifying that portion of the record that demonstrates the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). Once the moving party satisfies this burden, the non-moving party thereafter must produce specific facts demonstrating a genuine issue of fact for trial. Anderson v. Liberty Lobby, Inc., 477 U .S. 242, 247–48 (1986).

Although the Court must review the evidence in the light most favorable to the non-moving party, the non-moving party must do more than merely show that there is some "metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). Instead, the Federal Rules of Civil Procedure require the non-

moving party to present specific facts showing that a genuine factual issue exists by "citing to particular parts of materials in the record" or by "showing that the materials cited do not establish the absence . . . of a genuine dispute[.]" Fed. R. Civ. P. 56(c)(1). "The mere existence of a scintilla of evidence in support of the [non-moving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-moving party]." Anderson, 477 U.S. at 252. It is against this standard the Court reviews the following facts.

## II. BACKGROUND

This case is a putative class action brought by former employees of Arkema, Inc. ("Arkema") who are participants in the Arkema Inc. Retirement Benefits Plan ("Arkema Plan") sponsored by Arkema and administered by the Arkema Inc. Pension Administration Committee. The named Plaintiffs are former employees of M&T Chemicals. Plaintiffs were employed at the company's Carrollton, Kentucky, facility, which was sold to Arkema's corporate predecessor, Atochem North America, on December 31, 1989. Prior to the sale, Plaintiffs were participants in the M&T Chemicals' pension plan. After the sale, Plaintiffs became participants in the Atochem North America Plan (now the Arkema Plan).

On December 27, 2013, Plaintiffs, Roger Carter, Eddie Hewitt, David Warren, and Ricky Woods, filed suit against the Defendants asserting that amendments in the Arkema Plan violate the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 et seq., because they unlawfully deprived Plaintiffs of certain rights they had accrued as M&T Chemicals employees. The amended complaint contains four counts, three of which are the subject of the current cross-motions for partial summary judgment.

Count One, "Deprivation of Vested Rights by Change of Initial Service Date," alleges that "employees who had been hired prior to their 25th birthdays, and who were already fully

vested plan members with accrued service credit, had their initial service credit accrual dates 'adjusted' to the first day of the calendar month next following their attainment of 25 years of age." (Amended Complaint ¶ 16.)  The amended complaint further alleges that "[b]ecause service credit is multiplied by average annual earnings to calculate benefits under [the Arkema Plan], and any other plans in which the individual plaintiffs were participating, the loss of accrued service credit reduced participants' accumulated benefits." (Id. at ¶ 19.)

Plaintiffs contend that when Roger Carter was terminated on or about October 31, 2012, he had 36.255 years of service, but was credited with only 30 years of service.  Plaintiffs maintain that this deprivation of accrued service credit cost Carter an estimated $4,032.86 per year in retirement benefits.  Similarly, Plaintiffs contend that when Eddie Hewitt was terminated on September 30, 2012, he had 36.307 years of service, but was credited with only 30.167 years of service.  Plaintiffs maintain that this deprivation of accrued service credit cost Hewitt an estimated $3,995.65 per year in retirement benefits.

With respect to David Warren and Ricky Woods, when they were terminated, they had 29.246 and 28.862 years of service respectively but were only credited for 23.083 years of service.  Plaintiffs argue that this deprivation of accrued service cost Warren an estimated $3,805.83 per year in retirement benefits and Woods an estimated $5,322.46 per year.  Further, the loss of accrued service credit also deprived Warren and Woods of the option available to members with 25 years of service to retire early with a 3 % per year reduction in benefits, rather than the 5.5% per year reduction available to members with only 10 years of service. Additionally, Warren and Woods were not permitted to participate in a retirement medical benefits program available to members with 25 years of service at the time of the plant sale or closing.

Count Two, "Deprivation of Vested Rights by Revocation of '85 Rule,'" alleges that "[i]n or around 1993, [the Arkema Plan], and any other plans in which the individual plaintiffs were participating, revoked the 85-year rule, depriving Plaintiffs of the option of early retirement without penalty." Id. at ¶ 24. Specifically, the Rule of 85 contained in the M&T Combined Plan allowed participants to retire before normal retirement age without a reduction in benefits if the plan participants attained the age of 55 and had 30 years of accredited service. Similarly, under that plan, an employee could retire early with normal retirement benefits if he or she attained the age of 55, completed 10 years of accredited service, and retired due to the sale or closing of a company plant. Plaintiffs Carter and Hewitt both earned at least 30 years of service credit and reached age 55 before termination. With respect to Plaintiffs Warren and Woods, Plaintiffs allege that they had earned over 25 years of service credit and have since reached age 55. Plaintiffs argue that they have each satisfied the pre-amendments conditions to retire early.

Count Four, "Failure to Provide Benefits Statements," alleges that the Arkema Plan failed to provide benefits statements with the information specified in 29 U.S.C. § 1025 and 29 C.F.R. § 2510.104b-10 during the period from 1987-2005. Id. at ¶¶ 30, 31.

The parties have now filed cross-motions for partial summary judgment on these counts.

### III. DISCUSSION

#### A. Count 1 – Change of Initial Service Date

Plaintiffs allege that the Arkema Plan and its predecessor plans were subject to unilateral changes imposed by Arkema or its administrator that reduced the participants' credit years of service and deprived plan participants of vested rights in contravention of ERISA. Plaintiffs argue that pursuant to the 1997 Plan Amendment, Arkema adjusted the initial service credit accrual dates of M&T Chemical employees hired prior to their 25th birthday to the first day of

4

the calendar month following their attainment of 25 years of age. As a result of this conduct, Plaintiffs contend that they lost years of service credit already accrued and they received reduced benefits.

Defendants maintain that the 1997 Plan Amendment has two alternative methods of calculating retirement benefits for a M&T Chemical Carrollton facility employee, and the employee is entitled to the method that provides the higher benefit. According to Defendants, the Primary Method applies the Arkema Plan's benefits calculation to the employee's service, starting at the employee's Adjusted Service Date (i.e. the first day of the month following his 25th birthday). The Alternate Method provides a benefit equal to the sum of (a) the M&T Hourly Plan's benefit calculation to the time period from the employee's actual starting date through January 1, 1988, (b) the M&T Combined Plan's benefit calculation from January 1, 1988, through January 1, 1990, and (c) the Arkema Plan's benefits calculation for the time period from January 1, 1990, through the employee's date of termination.

Defendants further argue that because Arkema has not decreased the amount the Plaintiffs would receive under the M&T Chemicals Plan, they have not deprived Plaintiffs of any vested rights. Defendants contend that the accrued benefit to which ERISA's anti-cutback rule must be applied in this case is the package of rights that Plaintiffs earned under the M&T Plan and carried with them when they joined the Arkema Plan. Defendants maintain that none of the amendments to the Plan(s) reduced the annual pension to which any Plaintiff was entitled for his M&T Chemical services at the point in time that he joined the Arkema Plan.

"The well-established understanding of ERISA is that the statute operates to protect a working employee's reliance upon, and expectation of, promised benefits upon retirement." Thornton v. Graphic Communications Conference of Int'l Bhd. of Teamsters Supplemental Ret.

& Disability Fund, 566 F.3d 597, 607 (6th Cir. 2009)(citing Bellas v. CBS, Inc., 221 F.3d 517, 522 (3d Cir. 2000) ("Congress's chief purpose in enacting [ERISA] was to ensure that workers receive promised pension benefits upon retirement.")). Pursuant to ERISA § 204(g), 29 U.S.C. § 1054(g)(1), "'[t]he accrued benefit of a participant under a plan may not be decreased by an amendment of the plan,' which is commonly referred to as ERISA's anti-cutback rule." Hollowell v. Cincinnati Ventilating Co., Inc., 711 F. Supp. 2d 751, 765 (E.D. Ky. 2010). "[A]ccrued benefit[s]" are those "determined under the plan and . . . expressed in the form of an annual benefit commencing at normal retirement age." 29 U.S.C. § 1002(23)(A). The anti-cutback provision "makes plain that the terms of pension plan document(s) in effect while a participant worked for a covered employer dictate his or her 'accrued benefits.'" Thornton, 566 F.3d at 605–06. Thus, the Court uses the Plan's text as a starting point. Deschamps v. Bridgestone Americas, Inc. Salaried Employees Ret. Plan, 2015 WL 5254338, *10 (M.D. Tenn. Sept. 9, 2015).

At the time Plaintiffs were hired by M&T Chemicals, they became eligible to participate in the M&T Chemicals, Inc. General Pension Plan for Hourly Employees ("M&T Hourly Plan"). Through various mergers and acquisitions, Plaintiffs became employees of Arkema and its predecessors and participants in a number of various pension plans over the years. For purposes of this motion, the Court considers the 1994 Elf Atochem North America, Inc. Retirement Benefits Plan ("1994 Plan") and its 1997 Plan Amendment as particularly relevant.

The 1994 Elf Atochem North America, Inc. Retirement Benefits Plan ("1994 Plan") provided that the "service of employees of M&T Chemicals Inc. who became Participants in the Plan shall include service that was credited under the Pension Plan for Employees of M&T Chemicals Inc. as of March 31, 1990 for all purposes under the Plan." Joint Ex. E at

ARK_00425; Appendix J.1. The 1994 Plan also provided the following language as to how the Accrued Benefit might be calculated for the Plaintiffs in this case:

> J.3. <u>Amount of Benefit</u>. A participant who is a former participant under the Pension Plan of M&T Chemicals Inc. shall receive an Accrued Benefit under the Plan which equals the greater of the following:
> (1) the benefit to which a participant would be entitled under the benefit formula under the Pension Plan of M&T Chemicals Inc. based on service through March 31, 1990; or
> (2) the benefit to which a participant would be entitled under the benefit formula under the Pension Plan of M&T Chemicals Inc. based on service through December 31, 1989, and service under the Plan's benefit formula thereafter; or
> (3) the benefit to which a participant would be entitled under this Plan based on all of the participant's service with the Company.

<u>Id.</u>; Appendix J, J.3(3).

In 1997, the Plan was amended (hereinafter "1997 Plan Amendment") to provide that certain hourly employees, as of September 1, 1996, "shall have all service credited in accordance with Article III of this Plan." Joint Ex. E ARK_00442; Appendix J.1(2).[1] In addition to retaining the same accrued benefit calculation language as the 1994 Plan, the 1997 Plan Amendment provided that a former hourly employee would be entitled to the greater of:

> (a) the benefit to which the Participant would be entitled under the benefit formula under the Pension Plan of M&T Chemicals, Inc. based on service through December 31, 1989, and service under the [Elf Atochem] Plan's benefit formula thereafter; or
> (b) the benefit to which a Participant would be entitled under this [Elf Atochem] Plan based on all of the Participant's service with the Company.

<u>Id</u>. at ARK 00443; Appendix J.3(2)(a),(b).

In the Joint Statement of Undisputed Facts, Defendants have stated that as a result of the

---

[1] In some instances, the parties referred to the 1997 Amendment to the 1994 Elf Atochem Plan as the 1996 Amendment because the effective date is listed as September 1, 1996.

1997 Amendment, they began calculating the Accrued Benefit for M&T Chemicals' hourly employees, like Plaintiffs, by two methods, the Primary Method and the Alternative Method. The Primary Method applies the Arkema Plan's benefits calculation to the employee's service, starting at the employee's Adjusted Service Date (i.e. the first day of the month following his 25th birthday). (Joint Statement at ¶ 18.)  The Alternate Method provides a benefit equal to the sum of (a) the M&T Hourly Plan's benefit calculation to the time period from the employee's actual starting date through January 1, 1988, (b) the M&T Combined Plan's benefit calculation from January 1, 1988, through January 1, 1990, and (c) the Arkema Plan's benefits calculation for the time period from January 1, 1990, through the employee's date of termination.  See id. The Primary Method is the new method which, according to Defendants, was prompted by the 1997 Plan Amendment.  The Plaintiffs' claim is that the Primary Method reduces their benefit by not crediting them with the years of service prior to age 25.  Therefore, the question before the Court is whether Arkema's use of the adjusted service date under its Primary Method of calculating Plaintiffs' retirement pension benefits pursuant to the 1997 Plan Amendment deprived Plaintiffs of accrued benefits under the 1994 Plan and violated the anti-cutback rule.

Generally, interpretation of an ERISA plan is made by simply reviewing the language of the plan. Kolkowski v. Goodrich Corp., 448 F.3d 843, 850 (6th Cir. 2006).  The Plaintiffs were participants in the 1994 Plan which provided that "a Participant who is a former participant under the Pension Plan of M&T Chemicals Inc. shall receive an Accrued Benefit under the Plan" equal to "the benefit to which a participant would be entitled under this Plan based on all of the participant's service with the Company." Joint Ex. E ARK_00425; Appendix J.3(3). Consistent with this language, the 1994 Plan also provided that service of these employees shall include service credited under the M&T Chemicals Pension Plan as of March 31, 1990.   Under a plain

reading of this language set forth above, Plaintiffs should obtain annual pension benefits calculated under the 1994 Plan based on all of the participants' service with the Company. Accordingly, these pension benefits constitute an accrued benefit under ERISA.

Similarly, Plaintiffs were participants in the 1997 Plan Amendment. Defendants have identified the 1997 Amendment as justifying the calculation of the amount of Plaintiffs' accrued benefits under the Primary Method. For example, in answers to Plaintiffs' first set of interrogatories, Defendants disclosed that "to the extent that any former M&T employee's service date was adjusted for certain calculations under the Plan, this adjustment occurred pursuant to the January 1, 1997 Amendment No. 3 to the Elf Atochem North America, Inc. Retirement Benefits Plan." (DN 38, Exhibit 1, Defendant Arkema Inc. Retirement Benefits Plan's Responses to Plaintiff Carter's First Set of Interrogatories at 8.) Consistent with this statement, Defendants in their motion for summary judgment cite the 1997 Plan Amendment to the 1994 Elf Atochem Plan as the amendment that changed the benefit calculations for "certain hourly employees," including Plaintiffs. (Defendants' Motion for Partial Summary Judgment at 6.) Although the Defendants never fully explain which provisions of the 1997 Plan Amendment justify the use of the Primary Method, the Court accepts the stipulation by the Defendants that they changed their methods of calculating benefits as a result of the Amendment.[2] Therefore, the Court concludes that the 1994 Elf Atochem Plan contains the "accrued benefit" that was promised and the 1997 Plan Amendment is the purported "cutback" challenged by Plaintiffs.

The Court finds that Plaintiffs have shown that their accrued benefits decreased because of the 1997 Plan Amendment as interpreted by Defendants. Deschamps, 2015 WL 5254338,

---

[2] Even if Defendants' interpretation of the 1997 Plan Amendment is incorrect, the Court would still conclude that Arkema's interpretation of the Plan is an "amendment" for purposes of the ERISA anti-cutback rule. "An erroneous interpretation of a plan provision that results in the improper denial of benefits to a plan participant may be construed as an 'amendment' for the purposes of" ERISA's anti-cutback provision. Hein v. F.D.I.C., 88 F.3d 210, 216 (3d Cir. 1996). See also Hunter v. Caliber Systems, Inc., 220 F.3d 702, 712 (6th Cir. 2000).

9

*10-13. The 1994 Plan clearly and unambiguously provides that a former participant under the M&T Chemical Pension Plan shall receive an Accrued Benefit under the Plan equal to "the benefit to which a participant would be entitled under this Plan [the 1994 Plan] based on all of the participant's service with the Company." Joint Ex. E ARK_00425. The 1997 Amendment as applied by Defendants does not consider all of the participants' service with the Company.

Despite this, Defendants insist that the Primary Method of calculating Plaintiffs retirement benefits under the 1997 Plan Amendment did not reduce benefits granted to Plaintiffs. In support of this argument, Defendants present the affidavit of Rita Hagedorn, Manager of Retirement Benefits at Arkema. Hagedorn avers that "[f]rom the point when the Arkema Plan began using a second method to calculate the pension benefit attributed to former M&T hourly employees' years of service at M&T, the Arkema Plan used the adjusted service date." (Rita Hagedorn Affidavit at ¶ 6.) Further, Hagedorn represents that the "Arkema Plan has never changed this second method of calculating the benefit attributed to the former M&T hourly employees' pre-January 1, 1990 service at M&T." Id. Even if accurate, this argument is unavailing. "Consistent misinterpretation of a term 'does not mean that such misinterpretation should be deemed part of the Plan and sanctioned as lawful.'" Koebel v. Southern Graphic Systems, Inc., 2006 WL 228924, *2 (W.D. Ky. Jan. 30, 2006) (citing Foley v. International Bhd. Elec. Workers Local Union 98 Pension Plan, 271 F.3d 551, 558 (3d Cir. 2001) (district court erred in requiring administrator to follow past "poor administrative practices")). The fact that the Defendants previously neglected to apply all of the Plaintiffs' service with the company from their date of hire to retirement does not require Arkema to continue that error or require the Court to sanction that error. Koebel, 2006 WL 228924, *2.

In both their reply and sur-response, Defendants declined to address any arguments

regarding the interpretation of the 1994 Plan language. Defendants maintain that the Plaintiffs have asserted a new argument not pled in their Amended Complaint. Defendants argue that Plaintiffs' claim has always been that one or more amendments to the Plan deprived Plaintiffs of benefits they accrued during their service at M&T Chemical by applying the Adjusted Service Date. Defendants contend that Plaintiffs now inappropriately assert a new argument that the Arkema Plan has failed to give Plaintiffs the benefits the Arkema Plan promised under the Plan's own language. The Court disagrees.

In the amended complaint, Plaintiffs allege that the Arkema plan, along with the other plans in which the individual Plaintiffs are participants, have been subjected to unilateral changes imposed by the employer or the administrator, or both, which have reduced the participants' credit years of service and deprived plan participants of vested rights in contravention of ERISA. Despite the Defendants' argument or the parties' characterization of the claim, the issue is whether Arkema's use of the adjusted service date under its Primary Method of calculating Plaintiffs' retirement pension benefits deprived Plaintiffs of accrued benefits in violation of ERISA.

Finally, Defendants argue that if the Court were to consider Plaintiffs' interpretation of the 1994 Plan, it would be inappropriate to enter summary judgment at this time because no discovery has been performed on the history of the key language and the reasons for Arkema's interpretation of this language. As stated above, interpretation of an ERISA plan is generally made by simply reviewing the language of the plan. Kolkowski v. Goodrich Corp., 448 F.3d 843, 850 (6th Cir. 2006). "'Extrinsic evidence may not be used if the terms of a contract are unambiguous.'" Winnett v. Caterpillar, Inc., 553 F.3d 1000, 1011-12 (6th Cir. 2009)(quoting Yolton v. El Pascoe Tennessee Pipeline Co., 435 F.3d 571, 591 6th Cir. 2006)). See also Koebel

v. S. Graphic Sys., Inc. Pension Plan, 2006 WL 228924, *2 (W.D. Ky. Jan. 30, 2006)(citing Epright v. Envtl. Res. Mgmt., Inc., 81 F.3d 335, 339-40 (3d Cir. 1996)).  "[T]o show material ambiguity in the language of a plan, the competing interpretation must be a plausible one." Zirnhelt v. Michigan Consol. Gas Co., 526 F.3d 282, 287 (6th Cir. 2008).  Defendants have not offered a competing interpretation of the 1994 Plan language; therefore, extrinsic evidence cannot be considered.

For these reasons, the Court finds that the Defendants' use of the adjusted service date under its Primary Method of calculating Plaintiff's retirement pension benefits pursuant to the 1997 Plan Amendment violates the ERISA anti-cutback rule. Plaintiffs are entitled to accrued benefits equal to the benefits to which the Plaintiffs would be entitled to under the Arkema Plan based on all of the Plaintiffs' service with M&T Chemicals and Arkema.  Summary judgment on this issue is granted in favor of Plaintiffs.

### B. Rule of 85

Under the M&T Combined Plan, the named Plaintiffs were eligible for an early retirement benefit referred to as the Rule of 85.  The Rule of 85 allowed a participant to combine his age and years of service to retire early, while receiving the same benefit to which he would be entitled at normal retirement age. The M&T Combined Plan also provided a plant closing early retirement benefit.  Specifically, the M&T Combined Plan provided that a plan member would be entitled to an Immediate Early Retirement Benefit equal to his or her Normal Retirement Benefit if he or she "(i) has attained age 55 and completed 30 years of Accredited Service or (ii) has attained age 55 and completed 10 years of Accredited Service and his retirement is due to the sale or closing of a factory or Plant of the Company." Joint Ex. C at ARK_00169.  In 1990, Atochem (now Arkema) acquired M&T Chemicals.  Regarding former

12

M&T Chemicals employees, the Arkema Plan provides that "[i]f such Participant reached age 55 and was credited with 30 years of service under the M&T Plan as of December 31, 1989, he shall be eligible for the unreduced early retirement benefit described under the M&T Plan with respect to his benefit accrued before April 1, 1990." Joint Ex. F. at ARK_00531; Appendix J.2(1). For those M&T Chemicals employees who had not met these conditions, the Arkema Plan did not provide a Rule of 85.

The parties agree that ERISA's anti-cutback rule applies not only to the participant's basic accrued benefit, but also to accrued early retirement benefits, retirement-type subsidies, and optional forms of benefits. 29 U.S.C. § 1054(g)(2). The parties also agree that the Rule of 85 or the plant closing early retirement benefit are accrued benefits under 29 U.S.C. § 1054(g)(2). See, e.g., Cottillion v. United Refining Co., 781 F.3d 47, 58 (2015)("There is no question but that a standard early retirement benefit, provided exclusively upon the satisfaction of certain age and/or service requirements, is an accrued benefit that is protected by" § 1054(g) (quotations omitted)); Ahng v. Allsteel, Inc., 96 F.3d 1033, 1036 (7th Cir. 1996) ("[A]s long as an employee satisfies, or will be able to satisfy, the eligibility requirements of the early retirement benefit in effect prior to the amendment, § 204(g) protects the benefit.").

The parties also agree that "[a] participant may 'grow into' eligibility for retirement-type subsidy benefits under the anti-cutback rule by satisfying the eligibility requirements after the date of the amendment." Alcantara v. Bakery & Confectionery Union & Indus. Int'l Pension Fund Pension Plan, 751 F.3d 71, 77 (2d Cir. 2014); Bellas v. CBS, Inc., 221 F.3d 517, 521 (3d Cir. 2000); Ahng, 96 F.3d at 1036–37. As the Seventh Circuit explained in Ahng v. Allsteel, "[t]he courts of appeals that have ruled on an employee's right to 'grow into' early retirement benefits have . . . uniformly held that as long as an employee satisfies, or will be able to satisfy,

13

the eligibility requirements of the early retirement benefit in effect prior to the amendment, § 204(g) protects the benefit." Ahng, 96 F.3d at 1036 (emphasis added)).

First, the parties disagree on whether the early retirement benefits and subsidies under the M&T Combined Plan apply to the Plaintiffs' years of service with M&T Chemicals only or to all the years of service with both M&T Chemicals and Arkema. Plaintiffs maintain that the Accrued Benefit under the Rule of 85 must be calculated with all the years of service for the Company, including both pre-amendment and post-amendment years of service. Defendants disagree arguing that the Plaintiffs "are entitled to 'grow into their early retirement subsidy for the purposes of *qualifying* for, but not *calculation* of, that subsidy . . . .'" Corcoran v. Bell Atlantic Corp., 1997 WL 602859, *5 (E.D. Penn. Sept. 23, 1997).

The Sixth Circuit decision in Rybarczyk v. TRW, Inc., 235 F.3d 975 (6th Cir. Dec. 21 2000), appears to be consistent with Defendants' interpretation of the anti-cutback rule as it relates to these early retirement benefits or subsidies. In discussing the anti-cutback rule, the Sixth Circuit specifically cited the language of § 204(g) noting that "the anti-cutback rule . . . clearly barred [the employer] from amending its retirement plan in such a way as to reduce accrued early retirement benefits '*attributable to service before the amendment*. . . .'" Id. at 983 (emphasis added). The Sixth Circuit held in relevant part that "[a]lthough nothing in ERISA § 204(g) prevented [the employer] from reducing benefits attributable to *post*-December 18 service [the date of the amendment], accrued benefits attributable to *pre*-December 18 service had to remain inviolate. And, under § 204(g), benefits attributable to *pre*-December 18 service remain inviolate whether the age condition be satisfied 'before or after the amendment. . . .'" Id. Based upon this case law, the Court finds that the Rule of 85 applies only to the years of service before

14

the amendment. Accordingly, Plaintiffs' motion for partial summary judgment on the Rule 85 is granted in part.

Second, the parties disagree on whether Warren and Woods can grow into the age requirement in this specific case. Relying on <u>Alcantara v. Baker & Confectionary Union and Indus. Int'l Pension Fund Pension Plan</u>, Plaintiffs Warren and Woods argue that it is irrelevant that they did not meet the requirements for the plant closing early retirement benefit at the time the plan was amended to remove this benefit, because they are entitled to the benefit as long as they eventually satisfy the pre-amendment requirements. 751 F.3d 71 (2d Cir. 2014).

The Court finds that neither Warren nor Woods qualify for the plant closing early retirement benefit under the M&T Combined Plan. While the Court agrees with the Plaintiffs that a participant may "grow into" eligibility for an early retirement-type subsidy or benefits under the anti-cutback rule, Plaintiffs Warren and Woods did not satisfy all of the eligibility requirements of the pre-amendment early retirement benefit. <u>See</u> <u>Bellas</u>, 221 F.3d at 521; <u>Ahng</u>, 96 F.3d at 1036–37. Unlike the plaintiffs in <u>Alcantara,</u> Plaintiffs Warren and Woods have failed to satisfy a pre-amendment condition that cannot be cured. <u>See Shaver v. Siemens Corp.</u>, 670 F.3d 462, 490–91 (3d Cir. 2012) (denying application of § 204(g)(2) because service with successor employee "forever disqualifie[d the participants] from receiving . . . benefits under th[e] plan" which was "a prohibition that the passage of time cannot cure").

As indicated above, the M&T Combined Plan provided that

> a Member who retires on an *Early Retirement Date* in accordance with the provisions of Subsection 2 of Section IV shall be entitled to an immediate Early Retirement Benefit equal to (A) if (i) he has attained age 55 and completed 30 years of Accredited Service or (ii) he has attained age 55 and completed 10 years of Accredited Service and his retirement is due to the sale or closing of a factory or plant of the Company as described in Section VIII, the Normal Retirement Benefit that would be payable to him under

15

>this Section V commencing as of his Normal Retirement Date if he were then living, based on his Accredited Service to his Early Retirement Date . . . .

(M&T Combined Plan ARK_00169(emphasis added).) Significantly, Early Retirement Date is defined as "[i]f a Member terminates employment with the Company *after* (a) reaching age 55 and (b) completing five years of Accredited Service, his Early Retirement Date hereunder shall be the first day of the calendar month coincident with or next following the date of his termination of employment; and any such termination shall be considered retirement hereunder." (M&T Combined Plan, Section IV(2), ARK_00163 (emphasis added).) Under the pre-amendment plan in this case, to receive Early Retirement Benefits, the member must have terminated employment with the Company *after* reaching age 55 and completing five years of Accredited Service **AND** attained age 55 and completed 30 years of Accredited Service or attained age 55 and completed 10 years of Accredited Service if his retirement is due to the sale or closing of the plant. Here, neither Warren nor Woods had reached the age of 55 at the time they terminated their employment with the Company. The pre-amendment plan controls the employees' eligibility for early retirement benefits. Thus, in contrast to the pre-amendment plan in Alcantara, the M&T Combined Plan does not permit members to "age into" the benefits after leaving the service of the company. "ERISA § 204(g) can protect an entitlement to benefits, but it cannot create an entitlement to benefits when no entitlement exists under the terms of the [p]lan." Hein, 88 F.3d at 217. Warren and Woods do not satisfy the pre-amendment M&T Combined Plan's requirements. Accordingly, Plaintiffs Warren and Woods are not entitled to Early Retirement Benefits. Defendants' motion for partial summary judgment on this issue is granted.

16

Third, the parties disagree on whether Plaintiffs Warren and Woods are entitled to retirement medical coverage. Arkema provides medical insurance to certain former employees. In order to be eligible for Arkema's retiree medical benefits, an employee "must have at least 10 years of service and retire from Arkema at or after age 55." Joint Ex. G at ARK_02117. Plaintiffs argue that there is no dispute that these employees had more than 10 years of service. Further, Plaintiffs maintain that since they ultimately attained the age of 55, they have "aged into" satisfying the requirements for that benefit. For the same reasons set forth above, Warren and Woods do not satisfy the Arkema Plan requirement for retiree medical benefits. In order to satisfy the requirement, the Plaintiffs must retire from Arkema *at or after* age 55. Furthermore, Plaintiffs' argument with respect to the medical coverage is not well taken considering that the Plaintiffs stipulated that because Warren and Woods "had not reached 55 years old at the time of [their] termination, [they are] not eligible for Arkema's retiree medical coverage." (Joint Statement of Undisputed Facts ¶¶ 45, 52.) Accordingly, Plaintiffs Warren and Woods are not entitled to Arkema's retirement medical coverage, and summary judgment in favor of Defendants is granted on this issue.

### C. Count IV – Benefit Statements

In Count IV, Plaintiffs allege that the Arkema Plan "failed to provide benefits statements with the information specified in 29 U.S.C. § 1025 during the period from 1987-2005." (Amended Complaint at ¶ 30.) The lawsuit was filed on December 27, 2013, nearly eight years after the last date on which this alleged failure to provide statements could have occurred. Where a federal statute does not provide a limitations period, courts look to state law for the most analogous limitations period. Reed v. United Transportation Union, 488 U.S. 319, 323 (1989); Amos v. Plan Adm'r of Orio Healthcorp, Inc. Employee Benefit Plans, 2013 WL

17

5964506, *6 (S.D. Tex. Nov. 7, 2013). KRS § 413.120(b) provides a five-year statute of limitations for "[a]n action upon a liability created by statute, when no other time is fixed by the statute creating the liability." Utilizing this five-year statute of limitations, Plaintiffs' claim for failure to provide benefits statements is time-barred. Summary judgment is granted in favor of Defendants on this count.

## IV.  CONCLUSION

For the reasons set forth above, **IT IS HEREBY ORDERED** that the cross motions by the parties for partial summary judgment [DN 35, DN 36] are **GRANTED IN PART AND DENIED IN PART** consistent with this Opinion. Count IV of Plaintiffs' amended complaint is dismissed.

cc: counsel of record

5964506, *6 (S.D. Tex. Nov. 7, 2013). KRS § 413.120(b) provides a five-year statute of limitations for "[a]n action upon a liability created by statute, when no other time is fixed by the statute creating the liability." Utilizing this five-year statute of limitations, Plaintiffs' claim for failure to provide benefits statements is time-barred. Summary judgment is granted in favor of Defendants on this count.

## IV.  CONCLUSION

For the reasons set forth above, **IT IS HEREBY ORDERED** that the cross motions by the parties for partial summary judgment [DN 35, DN 36] are **GRANTED IN PART AND DENIED IN PART** consistent with this Opinion. Count IV of Plaintiffs' amended complaint is dismissed.

cc: counsel of record