UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

CIVIL ACTION NO. 3:13-CV-1241-JHM

ROGER D. CARTER,
EDDIE DEAN HEWITT,
DAVID WAYNE WARREN,                                                    PLAINTIFFS
RICKY LYNN WOODS,
and a class others similarly situated

V.

ARKEMA, INC., and
ARKEMA INC. RETIREMENT                                                 DEFENDANTS
BENEFITS PLAN

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on a motion by the plaintiffs for class certification. (DN 81.) Fully briefed, this matter is ripe for decision.

## I. BACKGROUND

This case is a putative class action brought by former employees of Arkema, Inc. ("Arkema") who are participants in the Arkema Inc. Retirement Benefits Plan ("Arkema Plan") sponsored by Arkema and administered by the Arkema Inc. Pension Administration Committee. The named plaintiffs are former employees of M & T Chemicals. The plaintiffs were employed at the company's Carrollton, Kentucky, facility, which was sold to Arkema's corporate predecessor, Atochem North America, on December 31, 1989. Prior to the sale, the plaintiffs were participants in the M & T Chemicals pension plan. After the sale, the plaintiffs became participants in the Atochem North America Plan (now the Arkema Plan).

On December 27, 2013, the named plaintiffs filed suit against the Defendants asserting that amendments to the Arkema Plan violate the Employee Retirement Income Security Act of

1974 ("ERISA"), 29 U.S.C. § 1001 et seq., because they unlawfully deprived the plaintiffs of certain rights they had accrued as M & T Chemicals employees. The amended complaint contains four counts, only two of which are relevant to the present motion for class certification.[1]

Count I, "Deprivation of Vested Rights by Change of Initial Service Date," alleges that "employees who had been hired prior to their 25th birthdays, and who were already fully vested plan members with accrued service credit, had their initial service credit accrual dates 'adjusted' to the first day of the calendar month next following their attainment of 25 years of age." (Pl.'s Amended Compl. [DN 12] ¶ 16.) The amended complaint further alleges that "[b]ecause service credit is multiplied by average annual earnings to calculate benefits under [the Arkema Plan], and any other plans in which the individual plaintiffs were participating, the loss of accrued service credit reduced participants' accumulated benefits." (*Id.* at ¶ 19.) For example, the plaintiffs contend that when Roger Carter and Eddie Hewitt were terminated in 2012, they each had over 36 years of service but were credited with only around 30 years of service, costing each around $4,000 per year in retirement benefits. Additionally, David Warren and Ricky Woods were credited with only 23 years of service when each had accumulated around 29 years of service at the time of their termination, costing each thousands of dollars in retirement benefits per year and depriving these plaintiffs of the option to retire early with a 3% per year reduction in benefits, which was available to retirees with 25 years of service, rather than the 5.5% per year reduction available to members with only 10 years of service. Additionally, Warren and Woods were not permitted to participate in a retirement medical benefits program available to members with 25 years of service at the time of the plant sale or closing.

---

[1] Count IV, which alleged that the defendants failed to provide benefit statements, was dismissed by the Court in its memorandum opinion and order on the parties' cross-motions for summary judgment. (DN 53, at 17–18.) And the named plaintiffs do not seek class certification of Count III for failing to providing information in response to the plaintiffs requests. (Pl.'s Mot. for Class Cert. [DN 81-1] at 2 n. 1.)

Count II, "Deprivation of Vested Rights by Revocation of '85 Rule,'" alleges that "[i]n or around 1993, [the Arkema Plan], and any other plans in which the individual plaintiffs were participating, revoked the 85-year rule, depriving Plaintiffs of the option of early retirement without penalty." *(Id.* at ¶ 24.) Specifically, the Rule of 85 contained in the M & T Combined Plan allowed participants to retire before normal retirement age without a reduction in benefits if the plan participants attained the age of 55 and had 30 years of accredited service. Similarly, under that plan, an employee could retire early with normal retirement benefits if he or she attained the age of 55, completed 10 years of accredited service, and retired due to the sale or closing of a company plant. Plaintiffs Carter and Hewitt both earned at least 30 years of service credit and reached age 55 before termination.

The parties filed cross-motions for partial summary judgment. (DN 35, 36.) The Court granted summary judgment to the plaintiffs on Count I, as the defendants' use of an adjusted service date under its primary method of calculating retirement pension benefits violated ERISA's anti-cutback provision. (DN 53, at 4–12.) It also granted summary judgment to the plaintiffs on Count II as it pertained to the claims of Carter and Hewitt, as the defendants' denial of accrued early retirement benefits also violated ERISA's anti-cutback provision. (*Id.* at 12–15.) But it granted summary judgment to the defendants on Count II as it pertained to the claims of Warren and Woods, as those plaintiffs had failed to meet all the eligibility requirements for early retirement benefits under the original, pre-amendment plan. (*Id.* at 15–17.)

The plaintiffs have now moved for class certification on both Counts I and II, asking the Court to certify the following two subclasses:

> [1] All participants in the Arkema, Inc. Retirement Benefits Plan, at any time from January 1, 1988 to the present, who were employed by Arkema, Inc. or its predecessors at Arkema's Carrollton, Kentucky plant, and whose initial service dates were

3

> "adjusted" to the first day of the month next following their attainment of 25 years of age.
>
> [2] All participants in the Arkema, Inc. Retirement Benefits Plan, at any time from January 1, 1988 to the present, who were employed by Arkema, Inc. or its predecessors at Arkema's Carrollton, Kentucky plant, and who are eligible (or may become eligible) for the Rule of 85 due to termination of employment after reaching the age of 55 and 30 years of service.

(Pl.'s Mot. for Class Cert. [DN 81-1] at 5.)

## II. STANDARD FOR CLASS CERTIFICATION

Class action lawsuits are governed by Fed. R. Civ. P. 23. A district court must conduct a "rigorous analysis" into whether the prerequisites of Rule 23 are met before certifying a class. *In re Am. Med. Sys., Inc.,* 75 F.3d 1069, 1078–79 (6th Cir. 1996). And while a district court has broad discretion in determining whether to certify a class, that discretion must be exercised within the framework of Fed. R. Civ. P. 23. *Id. See also Gulf Oil Co. v. Bernard*, 452 U.S. 89, 100 (1981); *Coleman v. Gen. Motors Acceptance Corp.*, 296 F.3d 443, 446 (6th Cir. 2002). The party seeking certification bears the burden of proof. *In re Am. Med. Sys., Inc.*, 75 F.3d at 1079. To meet this burden, the plaintiffs must first show that all four prerequisites of Rule 23(a) are satisfied, in that

> (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a).

Additionally, if the plaintiffs have satisfied all four factors of Rule 23(a), they must also show that the action meets the requirements of one of the categories defined in Rule 23(b). Here, the plaintiffs only seek certification under Rule 23(b)(2), which allows a class action to be

maintained if "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2).

## III. ANALYSIS

The plaintiffs seek certification of two subclasses: one including the plan participants who had their service date adjusted under the amended plan, and one including the participants who are eligible for early retirement benefits under the Rule of 85. *See* Fed. R. Civ. P. 23(c)(5) ("When appropriate, a class may be divided into subclasses that are each treated as a class under this rule"). The defendants take issue with the plaintiffs' argument that the two subclasses may be analyzed simultaneously, and the Court agrees. The two subclasses have different class representatives, different prospective members, and will entitle members to different relief. Thus, the Court must examine each proposed subclass separately.

### A. ADJUSTED SERVICE DATE SUBCLASS

The defendants do not oppose the proposed Adjusted Service Date subclass as strenuously as the proposed Rule of 85 subclass. However, the Court must still ensure that all of Rule 23's requirements for certification are met, even if there is no objection to the proposed subclass by the defendant. *See Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 597 (1997).

**1. Rule 23(a) Requirements**

**a. Numerosity**

The subclass must be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). According to the plaintiffs, discovery has revealed 75 individuals who would form this subclass. The defendants make no specific argument opposing certification of this subclass on the basis of its size.

"There is no strict numerical test for determining impracticability of joinder." *In re Am. Med. Sys., Inc.*, 75 F.3d at 1079 (citations omitted). The plaintiffs cite to *Pund v. City of Bedford*, 2017 WL 3219710, at *3–4 (N.D. Ohio June 28, 2017), for the proposition that "a class of 40 or more members raises a presumption of impracticability of joinder based on numbers alone."[2] Here, the plaintiffs have identified 75 potential subclass members and cited to numerous cases all finding that a similar number of class members is sufficient to satisfy Rule 23(a)(1). *See Rodger v. Elec. Data Sys. Corp.*, 160 F.R.D. 532, 535 (E.D. N.C. 1995) (57 class members); *Johns v. DeLeonardis*, 145 F.R.D. 480, 483 (N.D. Ill. 1992) (70 class members). The Court finds that 75 potential subclass members is sufficient to meet Rule 23(a)(1)'s numerosity requirement; while there appear to be few issues with identifying which employees qualify as subclass members, the number of potential subclass members makes joinder impracticable, as it would impede the Court's ability to efficiently manage the case. *Accord Wilson v. Anthem Health Plans of Ky.*, 2017 WL 56064, at *6 (W.D. Ky. Jan. 4, 2017) (finding numerosity requirement met, as joinder of 27 plaintiffs "would present several administrative complexities for the Court, rendering it highly impracticable to hold telephonic conferences, manage the electronic docket, and make scheduling decisions to the satisfaction of all parties").

**b. Commonality**

To establish commonality, the plaintiffs must "demonstrate that the class members have suffered the same injury." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 349–50 (2011) (citations and quotations omitted). The Court must look to "the capacity of a classwide proceeding to generate common *answers* apt to drive the resolution of the litigation." *Id.* at 350 (citations omitted) (emphasis in original). Here, the plaintiffs argue that each potential subclass

---

[2] The *Pund* court drew this proposition from 1 William B Rubenstein, Alba Conte and Herbert B. Newberg, *Newberg on Class Actions* § 3:12 (5th ed. 2017).

member suffered the same injury of having been denied credit for their years of service in calculating their retirement benefit. The Court finds that this injury meets the commonality requirement. The potential subclass members were systematically denied a particular benefit: years of service that were attained before their 25th birthdays. Further, this denial uniformly resulted in the same injury: reduced retirement benefits. And the Court's determination that this practice violated ERISA's anti-cutback provision provided a common answer that will drive the resolution of all of these claims. This is not a case where all potential class members have suffered a violation of the same law but not in a uniform manner that would defeat commonality. *See Dukes*, 564 U.S. at 350 ("Title VII, for example, can be violated in many ways . . ."). Instead, the defendants violated each subclass members' rights under the benefits plan in the exact same way. Thus, the Court finds that the commonality requirement has been met.

**c. Typicality**

To satisfy the typicality requirement of Rule 23(a)(3), the party seeking certification must demonstrate that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." *See Senter v. General Motors Corp.*, 532 F.2d 511, 525 (6th Cir. 1976). *See also Beattie v. CenturyTel, Inc.*, 511 F.3d 554, 561 (6th Cir. 2007). "[A] plaintiff's claim is typical if it arises from the same event or practice or course of conduct that gives rise to the claims of other class members, and if his or her claims are based on the same legal theory." *In re Am. Med.*, 75 F.3d at 1082 (quotations omitted). When it is alleged that the same unlawful conduct affected both the named plaintiff and the proposed class members, the typicality requirement is usually met, even if varying fact patterns underlie individual claims. *See Beattie*, 511 F.3d at 561. The existence of defenses against certain class members does not defeat typicality. *Ross v. RBS Citizens, N.A.*, 2010 WL 3980113, *3 (N.D. Ill. Oct. 8, 2010). "'Typical

7

does not mean identical, and the typicality requirement is liberally construed.'" *Id*. (quoting *Gaspar v. Linvatec Corp.*, 167 F.R.D. 51, 57 (N.D. Ill.1996)).

The Court finds the typicality requirement to be met. The claims of the plaintiffs are the same as those that will be asserted on behalf of the subclass; all claims arise from the defendants' amendment of the benefits plan, and each seeks to recover benefits that were denied based upon the defendants' failure to credit each retiree with the correct years of service. Thus, the claims of the representatives are typical of those that belonging to subclass members.

**d. Adequacy of Representation**

Finally, to satisfy the requirement of Rule 23(a)(4), the proponents of certification must demonstrate that the representative parties will fairly and adequately protect the interests of the class. The Sixth Circuit has articulated two criteria for determining adequacy of representation: "'1) the representative must have common interests with unnamed members of the class, and 2) it must appear that the representatives will vigorously prosecute the interests of the class through qualified counsel.'" *In re Am. Med.*, 75 F.3d at 1083 (quoting *Senter*, 532 F.2d at 525). Rule 23(a)(4) tests "the experience and ability of counsel for the plaintiffs and whether there is any antagonism between the interests of the plaintiffs and other members of the class they seek to represent." *In re Am. Med.*, 75 F.3d at 1083 (quoting *Cross v. Nat'l Trust Life Ins. Co.*, 553 F.2d 1026, 1031 (6th Cir. 1977)). "[I]f there is more than one named representative, it is not necessary that all the representatives meet the Rule 23(a)(4) standard; as long as one of the representatives is adequate, the requirement will be met." *Cook v. Rockwell Int'l Corp.*, 151 F.R.D. 378, 387 (D. Colo. 1993) (quotations omitted).

The Court finds that the named plaintiffs have common interests with the members of the subclass and that they will vigorously prosecute the interests of the class through counsel. Both

the named plaintiffs and potential subclass members have the same interest, as they all seek to have their actual years of service credited towards the calculation of their retirement benefits. The defendants have not argued that there are any potential conflicts between this subclass and its representatives, and the Court sees none. Further, the plaintiffs have shown that they will vigorously prosecute the case on behalf of the subclass throughout this litigation. From its inception, the plaintiffs' action has sought classwide relief, and counsel for the plaintiffs has already prevailed on their motion for summary judgment as to liability on Count I pertaining to this subclass. Thus, the Court finds that both the named plaintiffs and counsel will adequately represent the subclass.

**2. Rule 23(b)(2) Requirements**

The plaintiffs seek class certification pursuant to Fed. R. Civ. P. 23(b)(2). Rule 23(b)(2) allows for a class action when "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." In *Dukes*, the Supreme Court stated that

> [t]he key to the (b)(2) class is the indivisible nature of the injunctive or declaratory remedy warranted—the notion that the conduct is such that it can be enjoined or declared unlawful only as to all of the class members or as to none of them. In other words, Rule 23(b)(2) applies only when a single injunction or declaratory judgment would provide relief to each member of the class. It does not authorize class certification when each individual class member would be entitled to a different injunction or declaratory judgment against the defendant.

*Dukes*, 564 U.S. at 360 (quotations and citations omitted). The Court finds these requirements to be met; the plaintiffs have sought both injunctive and declaratory relief, and this relief would apply to all members of the class. The Court has found that the defendants violated ERISA's

anti-cutback provision by adjusting the service date of the named plaintiffs, and a declaratory judgment reforming the plan would apply equally to all subclass members who had their service dates adjusted.

Perhaps the closer question that arises from *Dukes*, however, is to what extent the subclass may seek monetary relief under Rule 23(b)(2). The defendants argue that the plaintiffs do not merely seek declaratory and injunctive relief but also damages, as they are seeking the payments that were denied to them under the plan.[3] This, according to the defendants, is impermissible under *Dukes*. In that case, the Supreme Court reversed the certification of claims for backpay under Rule 23(b)(2) and noted the following:

> Our opinion in *Ticor Title Ins. Co. v. Brown*, 511 U.S. 117, 121 . . . (1994) (per curiam) expressed serious doubt about whether claims for monetary relief may be certified under that provision. We now hold that they may not, at least where (as here) the monetary relief is not incidental to the injunctive or declaratory relief.
>
> \*\*\*
>
> In the context of a class action predominantly for money damages we have held that absence of notice and opt-out violates due process. See *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 812 . . . (1985). While we have never held that to be so where the monetary claims do not predominate, the serious possibility that it may be so provides an additional reason not to read Rule 23(b)(2) to include the monetary claims here.

*Dukes* 564 U.S. at 359, 363. These passages have created some doubt as to whether a class may ever seek monetary relief in a Rule 23(b)(2) class action. Thus, the Court must determine whether the plaintiffs and all potential class members are actually seeking damages, or whether any claim for monetary relief is merely incidental to the claims for injunctive and declaratory relief.

---

[3] While the defendants raise this argument only in reference to the Rule of 85 subclass, the Court will also address the issue as it pertains to the Adjusted Service Date subclass, as it merits discussion for both subclasses.

The Court finds that the plaintiffs' claims are primary for injunctive and declaratory relief, and any monetary element to those claims is incidental. In *Dukes*, the Supreme Court cited with approval *Allison v. Citgo Petroleum Corp.*, 151 F.3d 402, 415 (5th Cir. 1998), and its definition of incidental monetary relief as

> damages that flow directly from liability to the class *as a whole* on the claims forming the basis of the injunctive or declaratory relief . . . such incidental damages should not require additional hearings to resolve the disparate merits of each individual's case; it should neither introduce new substantial legal or factual issues, nor entail complex individualized determinations.

*Dukes*, 564 U.S. at 365–66. The monetary relief involved in this case meets this definition. The Court will not need to make any individualized factual or legal determinations if it must determine what monetary relief each subclass member should receive. Instead, as the Seventh Circuit noted in *Johnson v. Meriter Health Servs. Empl. Ret. Plan*, 702 F.3d 364, 371 (7th Cir. 2012),

> all that the class is seeking . . . is a reformation of the [ ] pension plan – a declaration of the rights that the plan confers and an injunction ordering [the employer] to conform the text of the plan to the declaration. If once that is done the award of monetary relief will just be a matter of laying each class member's pension-related employment records alongside the text of the reformed plan and computing the employee's entitlement by subtracting the benefit already credited it to him from the benefit to which the reformed plan document entitles him, the monetary relief will truly be "incidental" to the declaratory and (if necessary) injunctive relief (necessary only if [the employer] ignores the declaration).

This line of reasoning has been cited with approval by other district courts in the Sixth Circuit, *see Int'l Union v. Hydro Auto. Structures, Inc.*, 2013 WL 12109422, at *4 (W.D. Mich. Mar. 6, 2013), and the Court agrees that any money that the subclass members ultimately receive will only be incidental to the Court's declaratory judgment reforming the plan. Therefore, the Court finds that the Adjusted Service Date subclass may be certified under Rule 23(b)(2).

**3. Definition of Subclass**

The Court will certify the Adjusted Service Date subclass. However, the defendants object to the plaintiffs' proposed subclass definition. They argue that the subclass should not include "[a]ll participants in the Arkema, Inc. Retirement Benefits Plan," as the plaintiffs propose, but should instead be limited to all *hourly* employees under the plan. They argue that all discovery in this case has only pertained to employees that were originally part of the M & T Hourly Plan, and this litigation has never included salaried employees who participated in the M & T Salaried Plan. Thus, the defendants argue that the subclass definition should make this distinction. The plaintiffs raise two points in opposition to this change. First, they contest the defendants' assertions that this litigation has been limited to hourly employees, as the claims make no mention of whether employees were hourly or salaried. And second, they argue that there is no reason to exclude salaried employees from the subclass, as they have potentially suffered the same wrongful adjustment of their service date and denial of benefits.

This issue requires a close examination of the different benefit plans at issue in this case. While there originally were separate M & T Benefit Plans for hourly and salaried employees, these plans were combined in 1988 to form the Pension Plan for Employees of M & T Chemicals, Inc. This combined plan stated that employees became eligible for plan membership on the later of (1) the first day of the second month of their employment or (2) the first day of the month following their 21st birthday. (DN 36-6, at 24.) This marked a change from what was previously in place for both hourly and salaried employees. Under the M & T Hourly Plan, hourly employees became covered by the plan upon the date they became an employee. (DN 36-4, at 10.) The M & T Salaried Plan conversely granted membership to salaried employees on the later of (1) the first day of the calendar month next following their 25th birthday or (2) the first

day of the calendar month coinciding with or next following the date they becomes an employee. (DN 36-5, at 16.) Thus, until 1988, salaried employees could not be members of their plan until they were 25 years old, while hourly employees could become members of their plan at any age. This changed in 1988, when the eligibility age for both became 21.

The plan became more complicated after this, as the benefit plan began employing more than one method to calculate a retiree's benefits. (*See* 1994 Plan [DN 36-9] at 59.) However, the important point is that the plan was amended in 1997 (DN 36-9, at 75–78), and, as a result, it began using an adjusted service date to determine what benefits a retiree was entitled to and only counted the years after the employee's 25th birthday.[4] Based upon this sequence of changes, it would be appropriate to include the salaried employees who have had their benefits reduced under the 1997 amendment's use of an adjusted service date within the subclass. For example, if a salaried employee began working at M & T Chemicals in 1989 at the age of 21, he would have become a member of the combined benefit plan immediately, as he would have been age-eligible under the plan. If the defendants subsequently used an adjusted service date to calculate his benefits in a manner that denies him credit for his first four years of service, he would have suffered the same injury as the other subclass members who were similarly denied credit for the years worked prior to their 25th birthdays. The Court does not know if any such subclass members exist, and it appears the plaintiffs do not know either since the defendants have not provided discovery on salaried employees. But the Court will not limit the definition of the subclass to only hourly employees when there is evidence in the record that the defendants'

---

[4] As the Court noted in its memorandum opinion and order on the cross-motions for summary judgment, "the Defendants never fully explain which provisions of the 1997 Plan Amendment justify the use of the Primary Method" which uses the adjusted service date of the employee's 25th birthday. (DN 53, at 9.) The Court still is puzzled as to where this adjusted service date appears in the plan, but the defendants have consistently stated that this is the date used under the plan to calculate benefits. (*See* Joint Statement of Undisputed Facts [DN 26-3] ¶ 18.)

construction and implementation of the plan could have equally affected some salaried employees. Thus, the Court will not modify the definition of the subclass.

### B. RULE OF 85 SUBCLASS

The defendants raise numerous objections to the motion to certify the Rule of 85 subclass, arguing that this subclass is not so numerous so as to permit it to proceed as a class action, that the named plaintiffs are not adequate representatives of the subclass, and that certification is inappropriate under Rule 23(b)(2). The Court will address each in turn.

**1. Rule 23(a) Requirements**

**a. Numerosity**

The defendants argue that the numerosity requirement has not been met in this case since the Rule of 85 subclass actually only contains 38 individuals, as opposed to the plaintiffs' original assertion that it contained 75.[5] In their reply, the plaintiffs do not contest that this subclass only contains 38 individuals, but it argues that this number is still sufficient to meet the numerosity requirement. While 38 members is not so large as to create a presumption that joinder would be impracticable, it is still large enough for the Court to conclude that the numerosity requirement has been met. As the plaintiffs point out, "there is a relaxed numerosity approach for subclasses." *NorCal Tea Party Patriots v. IRS*, 2016 WL 223680, at *6 (S.D. Ohio Jan. 19, 2016) (quotations omitted). And the same concerns that were present with the Adjusted Service Date subclass regarding the Court's ability to efficiently manage the case are present with this subclass as well; it would be "highly impracticable to hold telephonic conferences, manage the electronic docket, and make scheduling decisions to the satisfaction of all parties" if

---

[5] The defendants also argue that the Rule of 85 subclass is actually two separate "sub-subclasses," as those who received lump sum payments (14 members) should be considered separately from those who receive annuities (24 members). As will be discussed below, the Court sees no reason to distinguish between the two, and it will treat all 38 members as belonging to the same unified subclass.

all 38 subclass members were required to individually join the action. *Wilson*, 2017 WL 56064, at *6. Thus, the court finds that the numerosity requirement has been met for the Rule of 85 subclass.

**b. Commonality**

The Court finds that the commonality requirement has also been met. Each potential subclass member suffered the same injury when they were denied early retirement benefits, even though they had met the requirements of the Rule of 85 that were outlined in the pre-amendment plans. The Court's order granting summary judgment to the plaintiffs who had met all of these requirements provided a common answer that can be equally applied to all potential class members to resolve their claims. *See Dukes*, 564 U.S. at 349–50. Thus, the commonality requirement has been met.

**c. Typicality**

The Court also concludes that the typicality requirement has been met. The defendants do not argue that there is any difference between the claims of the named representatives and those of the potential class members,[6] and the Court finds that the claims of the two named plaintiffs who are being permitted to act as class representatives on this claim are typical of those of the subclass. The claims arise from the same conduct by the defendants and rely on the same legal theory, in that the defendants violated ERISA's anti-cutback provision by denying them early retirement benefits they had accrued under the Rule of 85. Thus, this element has also been met.

---

[6] The defendants do argue that certification is improper because the named plaintiffs are subject to certain defenses that other subclass members are not. They make this argument under Rule 23(a)(4)'s requirement that the named plaintiffs be adequate representatives of the class. While the possibility that some class members will be subject to unique defenses can be considered under Rule 23(a)(3)'s typicality requirement, the Court does not interpret the defendants' objection as pertaining to the typicality of the class' claims.

**d. Adequacy of Representation**

The defendants argue that the two named plaintiffs who represent the subclass, Roger Carter and Eddie Hewitt, are not adequate class representatives, as they are subject to unique defenses and have separate interests from those of the subclass. The only unique defense cited by the defendants is that both Carter and Hewitt have taken a lump sum payment of their retirement benefits, as opposed to electing into receiving an annuity. Because they have taken the lump sum, the defendants argue that neither Carter nor Hewitt face a realistic threat of future harm that would entitle them to injunctive relief, whereas the subclass members who receive an annuity will possibly face such a threat.

The absence of unique defenses to which the named plaintiff may be subject is not a strict requirement for certification under Rule 23(a); instead, the presence of a unique defense may be evidence that the class representative is not positioned to act in the best interest of the class, as that defense may detract from their advocacy on behalf of the class as a whole. *See generally Alaska v. Suburban Propane Gas Corp.*, 123 F.3d 1317, 1321–22 (9th Cir. 1997) (district court did not abuse discretion in denying class certification when it appeared named plaintiffs would be subject to a unique defense). But the Court does not consider the fact that the class representatives received a lump sum payment of their retirement benefits to be a "unique defense" that would create such a conflict of interest between the named plaintiffs and the subclass members. As the Court discussed in relation to the requirements of Rule 23(b)(2) for the Adjusted Service Date subclass, the proposed subclass in this ERISA case is seeking "a reformation of the [ ] pension plan – a declaration of the rights that the plan confers[.]" *Johnson*, 702 F.3d at 371. Once the plan is reformed so as to provide the accrued benefits under the Rule of 85, then all subclass members, regardless of whether they have received a lump sum or

continue to receive an annuity, will have the same interest in receiving the benefits owed to them under the policy. Because these interests align, the fact that the class representatives received a lump sum will not detract from their representation of the subclass as a whole. Therefore, this distinction is not a persuasive reason to deny class certification.

The defendants also argue that the class representatives have different interests from those subclass members who receive annuity payments. Because the lump sum plaintiffs will only seek a one-time payment to supplement their already-received retirement benefits, this puts them in conflict with the subclass members who have elected to receive an annuity and have an interest in ensuring that the benefit plan remains funded into the future so that they may continue to receive yearly payments under the reformed plan. However, the defendants simply mention this as a potential conflict without offering any substantive evidence that there are legitimate concerns among either subclass members or the defendants regarding the funding of annuity payments into the future. A conflict "must not be speculative" if the Court is to rely on it in denying class certification, and the alleged conflict in this case rises only to the level of speculation. *Allen v. Holiday Universal*, 249 F.R.D. 166, 181 (E.D. Pa. 2008) (citations omitted). *See also Bartleson v. Dean Witter & Co.*, 86 F.R.D. 657, 661 (E.D. Pa. 1980) ("[W]e do not believe that hypothetical conflicts, which have no basis whatsoever in the record, should influence our consideration of plaintiff's adequacy as representative"). Thus, the Court will not refuse to certify the subclass on this ground.

Having resolved the above arguments, the Court otherwise finds the named plaintiffs to be adequate class representatives. Both Carter and Hewitt, the two named plaintiffs who will serve as class representatives, have demonstrated that they have common interests with the subclass members and will vigorously prosecute this case through competent counsel. They

have already prevailed on their motion for summary judgment as to liability on Count II, and there is no reason to think that their interest in obtaining personal relief does not align with their interest in obtaining classwide relief. Therefore, Rule 23(a)(4) is satisfied.

**2. Rule 23(b)(2) Requirements**

As discussed with the Adjusted Service Date subclass, the defendants oppose certification under Rule 23(b)(2) because the monetary relief sought by the subclass is not merely incidental to the injunctive or declaratory relief. For the reasons discussed above in section III.A.2, the Court concludes that the monetary relief sought by the Rule of 85 subclass does not predominate over the declaratory relief sought; any monetary relief will simply be incidental to a declaratory judgment reforming the plan so as to reinstitute the benefits owed to subclass members under the Rule of 85. Thus, Rule 23(b)(2) has been satisfied.

**3. Definition of Subclass**

Again, the defendants argue that the subclass should be defined to exclude salaried employees. However, the Court will not limit the subclass to just hourly employees, as the plaintiffs have not limited their claims to only those potential members of the subclass. Further, salaried employees were entitled to early retirement under the M & T Combined Plan's Rule of 85, making it possible that there are salaried employees who would belong to the subclass. Thus, the Court will certify the class without modifying the plaintiff's definition.

### IV. RULE 23 COMPLIANCE

In accordance with Fed. R. Civ. P. 23(c)(1)(B), the Court defines the two certified subclasses as follows:

> Subclass 1: All participants in the Arkema, Inc. Retirement Benefits Plan, at any time from January 1, 1988 to the present, who were employed by Arkema, Inc. or its predecessors at Arkema's Carrollton, Kentucky plant, and whose initial service dates were

adjusted to the first day of the month next following their attainment of 25 years of age.

Subclass 2: All participants in the Arkema, Inc. Retirement Benefits Plan, at any time from January 1, 1988 to the present, who were employed by Arkema, Inc. or its predecessors at Arkema's Carrollton, Kentucky plant, and who are eligible (or may become eligible) for the Rule of 85 due to termination of employment after reaching the age of 55 and 30 years of service.

Subclass 1 is certified as to Count I of the amended complaint, and Subclass 2 is certified as to Count II of the amended complaint.

Rule 23(c)(2)(A) states that the Court may direct appropriate notice to a class but is not required to do so. Neither party has asked the Court to direct notice to the subclass members. Therefore, the Court will not direct notice to the subclasses at this time.

Rule 23(g)(1) requires the Court to appoint class counsel. The Court must consider the work counsel has done in identifying or investigating potential claims in the action, counsel's experience in handling class actions, counsel's knowledge of the applicable law, and the resources counsel will commit to representing the class. Fed. R. Civ. P. 23(g)(1)(A). The Court may also consider counsel's ability to fairly and adequately represent the interests of the class. Fed. R. Civ. P. 23(g)(1)(B). David Leightty, counsel for the plaintiffs has provided his resume to the Court, and the Court is satisfied that he, along with Alison Messex, meet the requirements of Rule 23(g)(1). Therefore, the Court appoints them as counsel for the class.

### V. CONCLUSION

For the reasons stated herein, the motion for class certification (DN 81) is **GRANTED**.

*Joseph H. McKinley*

**Joseph H. McKinley, Jr., Chief Judge**
**United States District Court**

April 2, 2018

cc: counsel of record